UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                            :
MERIDIAN AUTONOMOUS INC.,                                   :
MERIDIAN USA, INC., and GLOBAL                              :
RESOURCES MANAGEMENT                                        :
CONSULTANCY INC.,                                           :        17-CV-5846 (VSB)
                                                            :
                           Plaintiffs,                      :        **OPINION & ORDER**
                                                            :
         - against -                                        :
                                                            :
COAST AUTONOMOUS LLC, PHOENIX                               :
WINGS, LTD., EMAPSCAN LLC, PIERRE                           :
LEFEVRE, MATTHEW LESH, COREY                                :
CLOTHIER, CYRIL ROYERE, JONATHAN                            :
GARRETT, and ADRIAN SUSSMANN,                               :
                                                            :
                           Defendants.                      :
                                                            :
-----------------------------------------------------------X

Appearances:

Perry R. Clark
Law Offices of Perry R. Clark
Palo Alto, California
*Counsel for Plaintiffs*

David M. Hickey
Hickey Smith LLP
Pasadena, California

Christian Dodd
Hickey Smith LLP
Jacksonville, Florida

Peter E. Perkowski
Perkowski Legal, PC
Los Angeles, California
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

Plaintiffs Global Resources Management Consultancy, Inc. ("GRMC"), Meridian Autonomous, Inc., and Meridian USA, Inc. (together, "Plaintiffs") bring this action against Defendants Coast Autonomous LLC ("Coast"), Phoenix Wings, Ltd. ("Phoenix Wings"), eMAPscan LLC ("eMAPscan"), Pierre Lefevre, Matthew Lesh, Corey Clothier, Cyril Royere, Jonathan Garrett, and Adrian Sussmann (together, "Defendants") alleging federal and state law claims related to the alleged misappropriation of Plaintiffs' physical and intellectual property by Defendants. Before me is the motion to dismiss of Defendants Coast, Phoenix Wings, eMAPscan, Lefevre, Lesh, Clothier, Royere, and Sussmann (the "Moving Defendants") pursuant to Federal Rules of Civil Procedure 8(d), 12(b)(1), and 12(b)(6), as well as the motion, in the alternative, for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). Because at least some of Plaintiffs' claims against some Defendants are subject to arbitration, those claims are dismissed, and I reserve my decision as to the remaining claims and non-signatory Defendants pending further briefing by the parties.

## I. Background[1]

From approximately November 2015 to May 2017, Defendants orchestrated a scheme during which they took Plaintiffs' intellectual and physical property, logistical and technical expertise, and money to obtain major business opportunities for themselves in the field of autonomous vehicles at Plaintiffs' expense. (FAC ¶ 19.)[2]

Defendant Lefevre initially visited the offices of Plaintiff GRMC in November 2015 to sell products and discuss the activities of his company, Phoenix Wings. (*Id.* ¶ 35.) In March

---

[1] I assume Plaintiff's allegations contained in the First Amended Complaint, (Doc. 94), to be true for purposes of this motion, *see Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). However, my references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "FAC" refers to the First Amended Complaint, filed December 22, 2017. (Doc. 94.)

2016, Lefevre informed GMRC that he wanted to work with GMRC on a project related to autonomous vehicles. (*Id.* ¶ 36.) On March 29, 2016, GMRC and Phoenix Wings entered into a Memorandum of Understanding ("MOU") and an OEM License Agreement ("OEM") related to pursuing an autonomous vehicle project. (*Id.* ¶¶ 22, 37.) Under the MOU and OEM, the parties, among other things, "agreed to form a partnership to pursue commercial opportunities using software and hardware to provide autonomous intelligent transportation solutions." (*Id.* ¶ 37.) The MOU and OEM contained identical arbitration provisions requiring arbitration of disputes related to the project. The provision provides that

> Any dispute, controversy or claim arising out of or relating to this Agreement, or the breach, termination or invalidity thereof, the Parties shall seek to solve amicably through negotiations. If the Parties do not reach an amicable solution within two (2) weeks, any dispute controversy or claim shall be finally settled by arbitration in the State of New York that shall have exclusive jurisdiction over all disputes arising in connection with this Agreement.

(Lefevre Decl. Ex. B, § 6; *id.* Ex. C, § 18.)[3] Plaintiffs subsequently brought Clothier, Garrett, Lesh, Royere, and Sussmann into the autonomous vehicle project as employees, and paid their salaries and expenses. (FAC ¶ 23.)

In May 2016, Plaintiffs incorporated Meridian Autonomous Inc. in New York and Meridian USA, Inc. in Florida to pursue GRMC's initiatives related to the development of autonomous vehicles, including the autonomous vehicle project. (*Id.* ¶¶ 28, 42.) Plaintiffs subsequently rented facilities in Florida, bought equipment and supplies for the Florida facilities, and provided technical staff and logistical support to the Florida facilities to advance the autonomous vehicle project with Defendants. (*Id.* ¶¶ 23, 30–31.) Lefevre, Royere, Clothier, Lesh, Garrett, and Sussmann (the "Individual Defendants") worked at Plaintiffs' facilities in

---

[3] "Lefevre Decl." refers to the Declaration of Pierre Lefevre, filed February 9, 2018. (Doc. 110.)

3

Florida on the development of autonomous vehicles, "including the integration of systems and software for autonomous vehicles . . . and the conversion of an electric bus (the 'World Bus'), a flat bed—logistic platform, a delivery vehicle, and golf carts, among others." (*Id.* ¶ 30.) Plaintiffs entrusted the Individual Defendants as managing agents of the Florida facilities and provided them complete control over access and security of the facilities. (*Id.*) Plaintiffs also provided substantial intellectual property and confidential business information, including trade secrets, to Defendants. (*Id.* ¶ 32.)

The focus of the autonomous vehicle project centered primarily on two vehicle demonstrations, one at Disney World and one for a vehicle called the "World Bus." (*Id.* ¶ 25.) In August 2016, as part of the autonomous vehicle project, Lefevre identified a plan to produce an autonomous vehicle to demonstrate at Disney World in October 2016. (*Id.* ¶ 47.) Each of the Individual Defendants worked in some capacity on the Disney World demonstration. (*Id.* ¶¶ 47, 51, 53, 60, 68, 75.) In addition, in January 2017, the World Bus was delivered to Plaintiffs' facility in Florida. (*Id.* ¶ 67.)

Plaintiffs planned on performing the demonstration at Disney World in early April 2017. (*Id.* ¶ 77.) Clothier projected that successful completion of the Disney World demonstration would win Plaintiffs sales of $4 million in 2017, $71 million in 2018, $162 million in 2019, $311 million in 2020, and $595 million in 2021. (*Id.* ¶ 89.) However, in late March 2017, one or more of the Individual Defendants removed Plaintiffs' property from the Florida facilities without permission or authorization from Plaintiffs. (*Id.* ¶ 78.) The property was removed to one or more locations controlled by the Individual Defendants, Phoenix Wings, and eMAPscan. (*Id.*) The removed property included all of the demonstration shuttles, including the shuttle that was to be used at the Disney World demonstration. (*Id.* ¶ 80.) Around the same time

Defendants removed the property, they created Defendant Coast for the purpose of using Plaintiffs' physical and intellectual property to compete directly with Plaintiffs. (*Id.* ¶ 84.) In or about June 2017, Defendant Lefevre created eMAPscan for the purpose of illegally using Plaintiffs' trade secrets, property, and intellectual property, as well as confidential information, to provide mapping services to Coast. (*Id.* ¶ 85.) Plaintiffs believe that Coast continues to hold possession of at least some of Plaintiffs' property. (*Id.* ¶ 95.)

## II. Procedural History

Plaintiffs filed this action on August 2, 2017. (Doc. 16.) On September 6, 2017, I granted Defendants' letter motions requesting a pre-motion conference in anticipation of filing motions to dismiss the complaint. (Doc. 62.) After holding a conference, I entered an order on October 11, 2017 temporarily staying the action pending the resolution of a previously filed action pending in California related to the same issues presented in this litigation (the "Related Action"). (Doc. 73.) After the California federal court dismissed the Related Action on personal jurisdiction grounds and transferred the case to this district, I lifted the stay in this action, accepted the Related Action as related, and entered a briefing schedule on Defendants' anticipated motion to dismiss. (*See* Docs. 78, 85.)

Moving Defendants filed a motion to dismiss on December 8, 2017. (Doc. 87.) On December 22, 2017, Plaintiffs filed the First Amended Complaint. (Doc. 94.) On February 9, 2018, Moving Defendants filed a motion to dismiss the First Amended Complaint, (Doc. 108), along with a supporting memorandum of law, (Doc. 109), and declarations, (Docs. 110–14). Plaintiffs filed their opposition memorandum on March 12, 2018, (Doc. 117), as well as a declaration in opposition, (Doc. 118). On March 27, 2018, Defendants filed their reply memorandum, (Doc. 126), and a request for judicial notice of certain public records, (Doc. 127).

5

Finally, Defendants filed a notice of supplemental authority on May 4, 2018, (Doc. 128), to which Plaintiffs responded on May 16, 2018, (Doc. 129).

### III. <u>Legal Standard</u>

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.

2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

IV. **Discussion**

Moving Defendants seek dismissal of the First Amended Complaint on several grounds, including, among others, that (1) it fails to make a "simple, concise, and direct" statement of its claims; (2) certain claims against "some defendants should be dismissed in favor of arbitration," (Defs.' Mem. 5);[4] (3) it fails to state a claim; and (4) I lack subject matter jurisdiction over the state law claims because the federal claims should be dismissed. Because at least some of the claims against some of the Defendants are subject to arbitration, those claims are dismissed, and I reserve decision on Defendants' remaining arguments pending further briefing as to whether the remaining claims and Defendants are covered by the arbitration provision.

A. *Applicable Law*

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, provides that a contractual arbitration provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2. In creating "a body of federal substantive law of arbitrability, applicable to any arbitration agreement with [its] coverage," the FAA was "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "Today federal policy strongly favors arbitration as an alternative dispute resolution forum." *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 24–25 (2d Cir. 1995).

---

[4] "Defs.' Mem." refers to the Memorandum of Law in Support of Defendants' Motion to Dismiss or in the Alternative for a More Definite Statement, filed February 9, 2018. (Doc. 109.)

7

Notwithstanding the strong policy in favor of arbitration agreements, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 127 (2d Cir. 2011) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)).

The Second Circuit has "repeatedly found that non-signatories to an arbitration agreement may nevertheless be bound according to ordinary principles of contract and agency. These principles include (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel." *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 97 (2d Cir. 1999) (citations and internal quotation marks omitted). The Second Circuit has applied the doctrine of estoppel when a non-signatory to an arbitration agreement seeks to arbitrate certain claims against a signatory. *Id.* at 98.

> Our cases have recognized that under principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of the relationship among the parties, the contracts they signed, and the issues that had arisen among them discloses that the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.

*JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177 (2d Cir. 2004) (internal quotation marks omitted). Courts have found that where a plaintiff treats the defendants, some of which are signatories and some of which are non-signatories, "as a single unit in its complaint[, the plaintiff] is estopped from claiming that the current signatories [to the arbitration clause] are distinct from the [non-signatory] defendants." *Smith/Enron*, 198 F.3d at 98.

The right to arbitrate a dispute may be waived. "In determining whether a party has waived its right to arbitration by expressing its intent to litigate the dispute in question, [courts] consider the following three factors: (1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice

and discovery; and (3) proof of prejudice." *La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010) (internal quotation marks omitted).

Waiver may only be found when the party opposing arbitration demonstrates prejudice. *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105 (2d Cir. 2002). The Second Circuit has recognized two types of prejudice: (1) "substantive prejudice," and (2) "prejudice due to excessive cost and time delay." *Id.* Substantive prejudice may be demonstrated "when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration." *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991). Prejudice may also be found "when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or expense." *Id.* There is no bright line with regard to the second type of prejudice; rather, "it is . . . determined contextually, by examining the extent of the delay, the degree of litigation that has preceded the invocation of arbitration, the resulting burdens and expenses, and the other surrounding circumstances." *Id.* However, "[i]ncurring legal expenses inherent in the litigation, without more, is insufficient evidence of prejudice to justify a finding of waiver." *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 163 (2d Cir. 2000) (quoting *PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 107–08 (2d Cir. 1997)). "[W]aiver of arbitration is not to be lightly inferred," and "any doubts concerning whether there has been a waiver are resolved in favor of arbitration." *PPG Indus.*, 128 F.3d at 107 (quoting *Leadertex*, 67 F.3d at 25).

**B.** *Application*

Moving Defendants argued in their opening brief that "[a]t a minimum" Counts 1, 3, 4, 9, 11, 14–18, and 22–24 against Defendants Lefevre, Phoenix Wings, and Royere should be

9

dismissed in favor of arbitration. (Defs.' Mem. 5–7.) Plaintiffs do not contest that these claims are subject to the arbitration clauses, (*see* Pls.' Opp. 5),[5] but instead argue that Defendants Phoenix Wings, Lefevre, and Royere have waived their right to arbitration, (*id.* at 5–12).

Because Plaintiffs do not oppose Moving Defendants' argument that the arbitration clauses in the MOU and OEM encompass the claims referred to in Moving Defendants' opening brief, I find that Plaintiffs concede that Counts 1, 3, 4, 9, 11, 14–18, and 22–24 against Defendants Lefevre, Phoenix Wings, and Royere are subject to the arbitration clause.[6] *See AT&T Corp. v. Syniverse Techs., Inc.*, No. 12 Civ. 1812(NRB), 2014 WL 4412392, at *7 (S.D.N.Y. Sept. 8, 2014) (concluding that plaintiff's "silence [in its opposition] concedes the point"); *Rosenblatt v. City of New York*, No. 05 Civ. 5521(GEL), 2007 WL 2197835, at *7 (S.D.N.Y. July 31, 2007) (finding arguments conceded where plaintiff failed to respond to them). Below, I first address whether I should construe Moving Defendants' motion as one to dismiss Plaintiffs' claims or as one to compel arbitration of Plaintiffs' claims. I then turn to Plaintiffs' arguments regarding waiver and, without deciding it, the question of whether the arbitration clauses encompass the remaining claims and Defendants.

### 1. Motion to Dismiss or Motion to Compel

In some circumstances, courts may construe a motion to dismiss based on a mandatory arbitration clause as a motion to compel arbitration. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (listing cases). However, where a movant neither explicitly nor implicitly requests the court to "direct that arbitration be held," a district court should not

---

[5] "Pls.' Opp." refers to Plaintiffs' Opposition to Defendants' Motion to Dismiss, filed March 12, 2018. (Doc. 117.)

[6] Plaintiffs also do not dispute that Meridian Autonomous, Inc. and Meridian USA, Inc. are subject to the arbitration clauses.

10

construe a motion to dismiss as a motion to compel arbitration. *Wabtec Corp. v. Faiveley Transp. Malmo AB*, 525 F.3d 135, 140 (2d Cir. 2008) (quoting 9 U.S.C. § 206).

Here, the Moving Defendants neither expressly nor implicitly request that I compel arbitration of Plaintiffs' claims. Rather, Moving Defendants explicitly state that their motion does not seek "to compel arbitration, but only seek[s] dismissal based on the arbitration clause." (Defs.' Reply 5.)[7] As a result, I construe Moving Defendants' motion as a motion to dismiss, and not as a motion to compel arbitration. *See Nicosia*, 834 F.3d at 230 (affirming district court's decision to construe motion as motion to dismiss and not as motion to compel because movant "had not explicitly or implicitly asked the court to order arbitration" and because the "motion to dismiss neither sought an order compelling arbitration nor indicated that [movant] would seek to force [plaintiff] to arbitrate in the future").

### 2. Waiver

Plaintiffs argue that Defendants Phoenix Wings, Lefevre, and Royere have waived their right to arbitration because of their delay in raising the issue and the resulting prejudice against Plaintiffs. As noted, courts consider three factors in determining whether a party has waived its right to arbitration: "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." *La. Stadium*, 626 F.3d at 159 (citation omitted). Moving Defendants argue that neither the time lapse nor the amount of litigation warrant denying their motion, and, in any event, Plaintiffs have not been prejudiced in such a way as to warrant denying their

---

[7] "Defs.' Reply" refers to the Reply Memorandum in Further Support of Defendants' Motion to Dismiss or in the Alternative for a More Definite Statement, filed March 17, 2018. (Doc. 126.)

11

motion.  I agree.  Weighing each of these factors, I find that Defendants Phoenix Wings, Lefevre, and Royere have not waived their right to arbitration.

First, the time elapsed between when the litigation commenced until the request for arbitration weighs in favor of Plaintiffs.  Moving Defendants first raised the issue of arbitration in their opening brief in support of the extant motion, (Defs.' Mem. 5), approximately ten months after Defendant Coast first filed suit against Plaintiffs in California state court, (Clark Decl. ¶ 3, Ex. 1), nine months after Defendants Coast, Phoenix Wings, and Lefevre filed the Related Action against Plaintiffs, and six months after Plaintiffs filed this action.  Moving Defendants had multiple opportunities to raise the issue of arbitration, yet did so only after several months passed.  As a result, the first factor weighs in favor of Plaintiffs.

The second factor—the amount of litigation to date, including motion practice and discovery—weighs in favor of Moving Defendants.  Although three separate law suits have been filed in relation to the issues raised in this dispute, one of the suits was voluntarily dismissed by Defendant Coast within approximately two months of its filing, and the other two suits are at the motion to dismiss stage.  Despite Plaintiffs' argument to the contrary, (Pl.'s Opp. 7–8), there have been no substantive rulings made in any of the cases.  The only issue that has been adjudicated is a procedural issue related to personal jurisdiction in the Related Action, an issue which is not relevant to the substance of the dispute between the parties and will not impact the ruling of a future arbitral panel.  Significantly, there has been no discovery to date in any of the actions.  Therefore, although it has been nearly a year since this litigation began, none of the substantive issues have yet been litigated.  This factor thus weighs in favor of Moving Defendants.  *See Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir. 1985) (holding that the

filing of a motion to dismiss, pursuit of discovery, and filing of an answer were insufficient to find waiver of right to arbitration).

Even if both of the first two factors weighed in Plaintiffs' favor, they would need to demonstrate prejudice in order to prevail on their waiver argument. *La. Stadium*, 626 F.3d at 159 ("Waiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated.") (citation omitted). Here, Plaintiffs have failed to establish that they have been prejudiced by Moving Defendants' delay. Plaintiffs first argue that they will be substantively prejudiced if their claims are transferred to arbitration because Moving Defendants are attempting to re-litigate their original motion to dismiss. (Pls.' Opp. 9–10.) However, that motion was never litigated and adjudicated; rather, Plaintiffs filed the First Amended Complaint thereby mooting the previously filed motion prior to a decision. Therefore, Moving Defendants cannot be attempting to re-litigate their original motion to dismiss since it was never litigated in the first place. *See Kramer*, 943 F.2d at 179 (holding that substantive prejudice may be demonstrated "when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration").

Plaintiffs also argue that they will be substantively prejudiced because, if this case were sent to arbitration, the Related Action will also most likely be sent to arbitration, precluding Plaintiffs from having their pending motion to dismiss decided in the related action.[8] (Pls.' Opp.

---

[8] Plaintiffs appear to take the opposite position in their response to Defendants' notice of supplemental authority. (*See* Doc. 129.) In their notice of supplemental authority, Defendants brought to my attention the order of Judge Alvin K. Hellerstein in a separate case involving GRMC and Lefevre, which Judge Hellerstein stayed in favor of arbitration. (*See* Doc. 128.) In his opinion, Judge Hellerstein explained that he did not find prejudice to the plaintiffs in that action, in part because the defendants agreed to discontinue a parallel case in France. (*See* Doc. 128-1.) Judge Hellerstein reasoned that if the defendants maintained the parallel case while the case before him went to arbitration, prejudice against the plaintiffs may arise. (*Id.*) In their response to Defendants' notice, Plaintiffs argue that Defendants here have not agreed to discontinue the Related Action in favor of arbitration, which could result in prejudice to Plaintiffs because the two actions would proceed on different tracks in different forums.

10.) However, it is unclear how that outcome would prejudice Plaintiffs, since they have not suggested that they would be unable to move to dismiss Defendants' claims before the arbitral tribunal. Plaintiffs' citation to *Louisiana Stadium* is not helpful, as the Second Circuit in that case based its finding of prejudice, in part, on the fact that the parties opposing arbitration would have been unable to bring a motion for judgment on the pleadings before the FINRA tribunal due to the relevant arbitration rules.[9] *La. Stadium*, 626 F.3d at 160.

Plaintiffs argue that they will also be procedurally prejudiced if this case were sent to arbitration because Defendants caused unnecessary expense and delay in waiting to raise the arbitration issue until their motion to dismiss the amended complaint. (Pls.' Opp. 10–11.) In particular, Plaintiffs assert they expended significant time and resources in moving to dismiss Defendants' claims in the Related Action, winning their transfer to this court, and amending their complaint in this action in response to Defendants' motion to dismiss the original complaint. However, "[i]ncurring legal expenses inherent in the litigation, without more, is insufficient evidence of prejudice to justify a finding of waiver." *In re Crysen/Montenay Energy Co.*, 226 F.3d at 163. Courts have found the expenses incurred due to the filing of "a few motions" is not enough to find waiver. *See, e.g.*, *LG Elecs., Inc. v. Wi-Lan USA, Inc.*, 623 F. App'x 568, 570 (2d Cir. 2015) (summary order). In addition, a large portion of the delay and expense in this action occurred after Defendants exercised their right to arbitration, which cannot be considered in determining whether Defendants waived their right. *See id.*

---

That is the opposite of Plaintiffs' argument in their opposition brief, which claims that Plaintiffs will suffer prejudice from not being able to pursue the Related Action in this court.

[9] To the extent Plaintiffs are arguing that Defendants have gained an unfair advantage by getting a preview of Plaintiffs' arguments in support of dismissal, that prejudice is balanced by whatever prejudice Defendants may suffer from forecasting their arguments in support of dismissal of Plaintiffs' claims in this action.

Because Plaintiffs have not demonstrated sufficient prejudice, I find that Defendants Phoenix Wings, Lefevre, and Royere have not waived their right to arbitration, and Counts 1, 3, 4, 9, 11, 14–18, and 22–24 against them are dismissed.

### 3. Claims and Parties Subject to the Arbitration Clauses

In their reply, Moving Defendants explicitly argue—for the first time—that all of the causes of action in the First Amended Complaint against all Defendants should be dismissed in favor of arbitration. (Defs.' Reply 3.) The general rule in this Circuit disfavors considering arguments for the first time on reply. *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief."); *see also Rowley v. City of New York*, No. 00 Civ. 1793(DAB), 2005 WL 2429514, at *5 (S.D.N.Y. Sept. 30, 2005) ("This Circuit has made clear it disfavors new issues being raised in reply papers."). Therefore, without having provided an opportunity to Plaintiffs to respond to these arguments, I decline to rule on them at this stage.

However, I note that Moving Defendants' belated argument raises two questions: (1) do the remaining claims in the First Amended Complaint fall within the scope of the arbitration clauses, and (2) are the Defendants who are not signatories to the MOU and OEM nevertheless subject to arbitration?

As to the first question, Moving Defendants do not explain in their opening memorandum why only certain of Plaintiffs' claims fall within the scope of the arbitration clauses and others do not. Given the purpose of the MOU and OEM to advance the autonomous vehicle project, the scope of the arbitration clauses, and the relationship of all of the claims to the autonomous vehicle project, it is an open question whether all of the claims are subject to the arbitration clauses. As to the second question, the only parties to this litigation who are signatories to the

15

MOU and OEM are GMRC and Lefevre on behalf of Phoenix Wings. With respect to the non-signatory Defendants, there must be "a relationship among the parties which either support[s] the conclusion that [the signatory] ha[s] consented to extend its agreement to arbitrate to [the non-signatory], or, otherwise put, made it inequitable for [the signatory] to refuse to arbitrate on the ground that it ha[s] made no agreement with [the non-signatory]." *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 361 (2d Cir. 2008). Such a relationship must be established for Moving Defendants to prevail on their motion to dismiss Plaintiffs' claims in their entirety.

As mentioned above, because Plaintiffs have not had an opportunity to respond to Moving Defendants' arguments regarding the arbitration clauses raised for the first time in their Reply, I decline to rule on those questions at this stage. However, I will grant Plaintiffs an opportunity to respond to those arguments and reserve my decision until Plaintiffs have done so.

## V. Conclusion

For the reasons stated herein, Moving Defendants' motion to dismiss is GRANTED IN PART, and Counts 1, 3, 4, 9, 11, 14–18, and 22–24 against Defendants Lefevre, Phoenix Wings, and Royere are dismissed. I reserve decision on the motion to dismiss with regard to the remaining claims and Defendants who are not signatories to the MOU and OEM.

Within twenty-one (21) days of the entry of this Opinion & Order, Plaintiffs shall submit further briefing regarding the questions of (1) whether the remaining claims in the First Amended Complaint fall within the scope of the arbitration clauses in the MOU and OEM, and (2) whether the Defendants who are not signatories to the MOU and OEM nevertheless subject to arbitration?

The Clerk of Court is respectfully requested to terminate the pending motion at Document 108.

SO ORDERED.

Dated: September 30, 2018
      New York, New York

_____
Vernon S. Broderick
United States District Judge