```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
MERIDIAN AUTONOMOUS INC.,                                   :
MERIDIAN USA, INC., and GLOBAL                              :
RESOURCES MANAGEMENT                                        :
CONSULTANCY INC.,                                           :                 17-CV-5846 (VSB)
                                                            :
                              Plaintiffs,                   :                 OPINION & ORDER
                                                            :
           - against -                                      :
                                                            :
                                                            :
COAST AUTONOMOUS LLC, PHOENIX                               :
WINGS, LTD., EMAPSCAN LLC, PIERRE                           :
LEFEVRE, MATTHEW LESH, COREY                                :
CLOTHIER, CYRIL ROYERE, JONATHAN                            :
GARRETT, and ADRIAN SUSSMANN,                               :
                                                            :
                              Defendants.                   :
                                                            :
------------------------------------------------------------X
```

Appearances:

Perry R. Clark
Law Offices of Perry R. Clark
Palo Alto, California
*Counsel for Plaintiffs*

David M. Hickey
Hickey Smith LLP
Pasadena, California

Christian Dodd
Hickey Smith LLP
Jacksonville, Florida

Peter E. Perkowski
Perkowski Legal, PC
Los Angeles, California
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

Plaintiffs Global Resources Management Consultancy, Inc. ("GRMC"), Meridian Autonomous, Inc., and Meridian USA, Inc. (together, "Plaintiffs") bring this action against Defendants Coast Autonomous LLC ("Coast"), Phoenix Wings, Ltd. ("Phoenix Wings"), eMAPscan LLC ("eMAPscan"), Pierre Lefevre, Matthew Lesh, Corey Clothier, Cyril Royere, Jonathan Garrett, and Adrian Sussmann (together, "Defendants"), alleging federal and state law claims related to the alleged misappropriation of Plaintiffs' physical and intellectual property by Defendants. On September 30, 2018, I issued an Opinion & Order dismissing Counts 1, 3, 4, 9, 11, 14–18, and 22–24 of Plaintiffs' First Amended Complaint ("September 30 Opinion & Order"), (Doc. 94), as against Defendants Lefevre, Phoenix Wings, and Royere ("signatory Defendants"), concluding that these counts were subject to the parties' agreement to arbitrate, (Doc. 130). However, I reserved decision on Defendants' motion to dismiss with regard to the remaining counts in the First Amended Complaint and with regard to application of the arbitration clauses to Defendants Lesh, Clothier, Garrett, Sussmann, and eMAPscan ("non-signatory Defendants"), who were not signatories to the arbitration agreements. Because I find that (1) Plaintiffs are estopped from avoiding arbitration against the non-signatory defendants, and (2) the remaining counts are encompassed by the broad language of the arbitration clauses, I dismiss Counts 1, 3, 4, 9, 11, 14–18, and 22–24 of Plaintiffs' First Amended Complaint as against the non-signatory Defendants, and dismiss the remaining counts (2, 5–8, 10, 12, 13, 19–21) against all Defendants.

I.  **Procedural History**[1]

In the September 30 Opinion & Order, I directed the parties to submit additional briefing regarding (1) whether the remaining claims in the Amended Complaint fall within the scope of the arbitration clauses in the parties' agreements, and (2) whether the non-signatory defendants are nevertheless subject to arbitration. (Doc. 130, at 16.) In compliance with my order, Plaintiffs filed a statement in opposition to dismissal on October 22, 2018, (Doc. 131), and Defendants filed a response in support of dismissal on November 5, 2018, (Doc. 132).

II.  **Legal Standards**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, provides that a contractual arbitration provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2. In creating "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within [its] coverage," the FAA was "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "Today federal policy strongly favors arbitration as an alternative dispute resolution forum." *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 24–25 (2d Cir. 1995). Notwithstanding the strong policy in favor of arbitration agreements, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 127 (2d Cir. 2011) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)).

---

[1] I incorporate by reference the facts contained in the Background section of the September 30 Opinion & Order, and only add in this opinion subsequent procedural history.

The Second Circuit has "repeatedly found that non-signatories to an arbitration agreement may nevertheless be bound according to ordinary principles of contract and agency. These principles include (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel." *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 97 (2d Cir. 1999) (citations and internal quotation marks omitted). The Second Circuit has applied the doctrine of estoppel where a non-signatory to an arbitration agreement seeks to arbitrate certain claims against a signatory. *Id.* at 98.

Under principles of estoppel, "[a] non-signatory who attempts to compel arbitration [] must demonstrate that: (1) 'the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed,' and (2) the 'relationship among the parties . . . justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the [non-signatory].'" *Medidata Sols., Inc. v. Veeva Sys. Inc.*, 748 F. App'x 363, 366 (2d Cir. 2018) (summary order) (citing *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 127 (2d Cir. 2010)). Such a conclusion is justified when there exists "a relationship among the parties which either support[s] the conclusion that [the signatory] had consented to extend its agreement to arbitrate to [the non-signatory], or, otherwise put, [makes] it inequitable for [the signatory] to refuse to arbitrate on the ground that it had made no agreement with [the non-signatory]." *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 361 (2d Cir. 2008); *see also Republic of Iraq v. BNP Paribas USA*, 472 F. App'x 11, 14 n.3 (2d Cir. 2012) (summary order). The Second Circuit has stated that "the estoppel inquiry is fact-specific." *Ross v. Am. Exp. Co.*, 547 F.3d 137, 144 (2d Cir. 2008) (quoting *JLM Indus., Inc. v. Stolt–Nielsen S.A.*, 387 F.3d 163, 178 (2d Cir. 2004)).

## III. Discussion

Plaintiffs argue that an obligation to arbitrate must be based on a party's consent, and that the relationship between Plaintiffs and the non-signatory Defendants is insufficient to support arbitration based on estoppel. Defendants assert that the claims against the non-signatory Defendants are pled in a group-pleading format and are inextricably linked to the claims I previously dismissed based on the parties' agreement to arbitrate. In addition, Defendants argue that arbitration based on estoppel is appropriate in the instant case because Plaintiffs' claims against the non-signatory Defendants are intertwined with the underlying agreements, and the non-signatory Defendants have a relationship with the signatories to the agreements that is sufficiently close to support arbitration on the basis of estoppel.

### A. *The Issues Raised Are Intertwined*

Here, there does not appear to be a dispute that the issues raised in the claims against the non-signatory Defendants are intertwined with the underlying agreements giving rise to arbitration. As Defendants argue, "the allegations are so intertwined that they are made against all Defendants in group pleading format." (Doc. 131, at 3.) In fact, Plaintiffs' civil conspiracy claim—Count 12—alleges that the Defendants entered into an agreement between themselves to commit the alleged acts that serve as the basis for Plaintiffs' other claims, which include claims I have already concluded are subject to arbitration. (Doc. 94 ¶ 160.) Pleading concerted action between a non-signatory Defendant and a signatory Defendant is evidence that claims between the parties are intertwined. *See Ragone*, 595 F.3d at 128 (concluding that claims against a non-signatory Defendant were intertwined with a dispute under an arbitration agreement when "claims of unlawful harassment and retaliation against [signatory and non-signatory defendants] rely on the concerted actions of both defendants"). Similarly, the Second Circuit has found a

claim to be intertwined with an arbitration agreement when that claim involved allegations of tortious interference with the contract giving rise to arbitration. *Sokol Holdings, Inc.*, 542 F.3d at 358–59 ("Because Sokol must prove Tolmakov's breach of the Emir Contract in order to make out its claim for [non-signatory] BMB's tortious interference with the contract, [the tortious interference] claim is 'intertwined' with the Emir Contract."). The factual issues underlying Plaintiffs' claims here are similarly intertwined.

Plaintiffs do not seriously contest this conclusion, but instead oppose only Defendants' demonstration of the second estoppel factor. (*See* Doc. 131, at 4 ("Defendants' argument is that 'the allegations are so intertwined that . . . they are made against all defendants in group pleading format.' [] But assuming that this is true—which it is not—a finding that allegations are 'intertwined' is not all that is required to find that a party is obligated to arbitrate on the basis of estoppel.")) (internal citation omitted). For these reasons, I find that Defendants have satisfied the first factor required by the estoppel analysis.

### B. *The Parties' Relationship Justifies Estoppel*

The relationship among the parties is sufficiently close and formal to justify the conclusion that estoppel is appropriate, satisfying the second factor required by the estoppel analysis. When assessing relationships between signatories and non-signatories to an arbitration agreement, the Second Circuit has noted that estoppel cases "have tended to share a common feature in that the non-signatory party asserting estoppel has had some sort of corporate relationship to a signatory party; that is, [the Circuit] has applied estoppel in cases involving subsidiaries, affiliates, agents, and other related business entities." *Ross v. Am. Exp. Co.*, 547 F.3d 137, 144 (2d Cir. 2008) (citing *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 209 (2d Cir. 2005) (holding that post-merger survivor corporation could invoke arbitration agreement

6

signed by corporation subsumed in merger); *JLM Industries*, 387 F.3d at 178 (holding that plaintiffs could not avoid arbitration of antitrust conspiracy claim where plaintiffs argued that the conspiratorial conduct giving rise to claim was undertaken by non-signatory parent companies rather than contracting subsidiaries); *Astra Oil Co., Inc.*, 344 F.3d 276, 280 (2d Cir. 2003) (compelling arbitration where plaintiff acted toward non-signatory affiliated corporation "as if it were signatory"); *Smith/Enron Cogeneration Ltd. P'ship*, 198 F.3d at 97 (compelling plaintiff to arbitration where "it treated a group of related companies as though they were interchangeable")). In one case, the Circuit applied principles of estoppel to compel arbitration where a signatory admitted and knew that when she signed an arbitration agreement with her employer, "she would work with and be supervised by [non-signatory] personnel in the ordinary course of her daily duties." *Ragone*, 595 F.3d at 128 ("This knowledge that she would extensively treat with ESPN personnel is sufficient to demonstrate the existence of a relationship between Ragone and ESPN that allows the latter to avail itself of the arbitration agreement between Ragone and AVI."). The Circuit has distinguished the above types of cases from cases in which "a defendant [] became 'aligned or associated' with a signatory to [an] arbitration agreement 'by wrongfully inducing [the signatory] to breach its obligation [to the plaintiff] under that contract.'" *Medidata Sols., Inc.*, 748 F. App'x at 367 (internal citation omitted); *see also Ross*, 547 F.3d at 146 (rejecting estoppel because the defendant credit card company's "only relation" with agreements between holders of competitor cards and issuing banks "was as a third party allegedly attempting to subvert the integrity of the cardholder agreements").

Plaintiffs' relationship with the non-signatory Defendants demonstrates that Plaintiffs not only treated the non-signatory Defendants as affiliates of the signatory Defendants, but also "admitted and knew" that the non-signatory Defendants would be involved in the performance of

7

the agreements giving rise to arbitration. *Ragone*, 595 F.3d at 128. The First Amended Complaint specifically alleges that "Defendants Royere, Clothier, Lesh, Garret, Sussman, eMAPscan, Phoenix Wings, and Coast are, at least, employees, agents, partners, advisors, subsidiaries, or affiliates of Defendant Lefevre." (Doc. 94 ¶ 117). Thus, Plaintiffs admit that this case involves the same "common feature" found in most Second Circuit estoppel cases, "that the non-signatory part[ies] asserting estoppel [] had some sort of corporate relationship to a signatory party." *Ross*, 547 F.3d at 144; *see also Carroll v. LeBoeuf, Lamb, Greene & McCrae*, 374 F.Supp. 2d 375, 378 (S.D.N.Y.2005) (because signatory plaintiffs "specifically and repeatedly allege" that signatory defendant "acted at all relevant times [as] the agent" of non-signatory defendants, plaintiffs were estopped from avoiding arbitration with non-signatories).[2] In addition, as Plaintiffs admit, they are the ones that brought the individual non-signatory Defendants into the fold. (Doc. 94 ¶ 23 ("In addition to Defendant Lefevre, Plaintiffs brought Defendants Clothier, Garret, Lesh, Royere, and Sussman into the autonomous vehicle project as employees.").) Indeed, the individual non-signatory defendants worked at Plaintiffs' facilities in Florida on the autonomous vehicle project created by the parties' agreements because of Plaintiffs. (Doc. 94 ¶ 30.) Plaintiffs entrusted these defendants as managing agents of Plaintiffs' Florida facilities and provided them complete control over access and security of the facilities in connection with the autonomous vehicle project. (*Id*); *cf. Birmingham Assocs., Ltd. v. Abbott Labs.*, 547 F. Supp. 2d 295, 304 (S.D.N.Y.2008) (finding estoppel appropriate in part because a

---

[2] It is also likely that Plaintiffs could be bound to arbitrate against the non-signatory defendants based on an agency theory. "The Second Circuit has noted that 'it remains an open question' whether a non-signatory may proceed to arbitration against a signatory under any theory other than estoppel." *McLaughlin v. MacQuarie Capital (USA) Inc.*, No. 17-CV-9023(RA), 2018 WL 3773992, at *4 n.5 (S.D.N.Y. Aug. 7, 2018) (citing *Ross v. Am. Express Co*., 547 F.3d 137, 143 n.3 (2d Cir. 2008)). "Until that path is definitively foreclosed, however, '[c]ourts in this and other circuits consistently have held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement.'" *Id.* (citing *Campaniello Imps., Ltd. v. Saporiti Italia S.p.A*., 117 F.3d 655, 668 (2d Cir. 1997) (citation omitted); *accord Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993)).

8

non-signatory parent company "participated" in a drug development program established by the relevant contract, and thus signatory plaintiff "could have foreseen . . . it might be required to arbitrate" with the parent company).

The facts also indicate that the non-signatory Defendants were not mere peripheral "third part[ies] [who] allegedly attempt[ed] to subvert the integrity of the [signatories' agreements]." *Ross*, 547 F.3d at 146. Instead, the relationship between Plaintiffs and the non-signatory Defendants predates any alleged subversion of Plaintiffs' rights under the agreements. This was by Plaintiffs' design because, as stated, Plaintiffs hired the non-signatory Defendants to carry out the performance of the agreements in question. Accordingly, the "relationship among the parties [] support[s] the conclusion that [Plaintiffs] had consented to extend [their] agreement to arbitrate to [the non-signatory Defendants], or, otherwise put, [makes] it inequitable for [Plaintiffs] to refuse to arbitrate on the ground that [they] had made no agreement with [the non-signatory Defendants]." *Sokol Holdings, Inc.*, 542 F.3d at 361. The second factor of the estoppel analysis is therefore satisfied.

### C. *The Remaining Claims*

In the September 30 Opinion & Order I declined to dismiss Counts 2, 5–8, 10, 12, 13, 19–21 of the First Amended Complaint because Defendants only identified these counts as being subject to arbitration in their reply brief. (Doc. 130, at 15.) However, after reviewing the parties' supplemental briefing, and in light of my conclusion above that the issues raised in all of Plaintiffs' claims are intertwined with the claims subject to arbitration, I now dismiss all the claims in the Amended Complaint as being subject to arbitration.

The arbitration provision to the underlying agreement states that:

Any dispute, controversy or claim arising out of or relating to this Agreement, or the breach, termination or invalidity thereof, the Parties shall seek to solve amicably

9

through negotiations. If the Parties do not reach an amicable solution within two (2) weeks, any dispute[,] controversy or claim shall be finally settled by arbitration in the State of New York that shall have exclusive jurisdiction over all disputes arising in connection with this Agreement.

(Lefevre Decl. Ex. B, § 6; *id*. Ex. C, § 18.)[3] This type of arbitration clause is incredibly broad. *See Paramedics Electromedicina Comercial. Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 649 (2d Cir. 2004) (clause requiring arbitration for "any controversy, claim or dispute between the Parties arising out of or relating in any way to this Agreement" was "of the broad type"); *Vera v. Saks & Co.*, 335 F.3d 109, 117 (2d Cir. 2003) (language in collective bargaining agreement requiring arbitration of "[a]ny dispute, claim, grievance or difference arising out of or relating to this Agreement which the Union and the Employer have not been able to settle" constituted a broad arbitration clause); *Smith/Enron Cogeneration Ltd. P'ship. Inc.*, 198 F.3d at 98–99 (clause providing that "[a]ny Dispute that is not resolved by the parties shall be finally settled by arbitration" was broad). The broad nature of the arbitration clause, combined with the rule "that doubts as to whether a claim falls within the scope of [an] agreement should be resolved in favor of arbitrability," *ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir. 2002) (quotation marks and citations omitted), compels the conclusion that Counts 2, 5–8, 10, 12, 13, 19–21 of the First Amended Complaint should be dismissed in favor of arbitration.[4]

Plaintiffs' only argument to the contrary is that certain counts that have not yet been dismissed—Count 5 (breach of contract (confidentiality agreement)), and Count 6 (breach of employment agreement)—involve contractual obligations other than those contained in the

---

[3] "Lefevre Decl." refers to the Declaration of Pierre Lefevre, filed February 9, 2018. (Doc. 110.)

[4] This conclusion is buttressed by the fact that many of the remaining counts are duplicative of counts I have already concluded are subject to arbitration. For example, Count 2 (breach of duty of loyalty), Count 8 (breach of duty of agent), and Count 10 (faithless servant) are duplicative of dismissed Count 9 (breach of fiduciary duty).

10

agreements giving rise to arbitration. (Doc. 131, at 2.) This argument is inapposite because Plaintiffs do not identify anything in those agreements that forecloses the conclusion that the obligations in those agreements arose out of or relate to the agreements containing the arbitration clause. In fact, the evidence indicates that these contracts did indeed arise out of the parties' original agreements creating the autonomous vehicle project and containing the arbitration clause. With respect to the confidentiality agreement in Count 5, the agreement was made a month after the agreements containing the arbitration clause, and was made "in connection with the consideration of a possible transaction between [Defendant Lefevre] and [Plaintiffs] relating to [autonomous vehicle products]." (Lefevre Decl., Ex. A.; *see also* Doc. 94 ¶¶ 29, 118 (alleging a connection between the agreements giving rise to arbitration, and the confidentiality agreement).) With respect to the employment agreement in Count 6, the agreement similarly post-dated the agreements that created the autonomous vehicle project, and was entered into so that Plaintiffs could employ Defendant Garrett to work on the project. (*See* Doc. 94 ¶ 29.) Therefore, I cannot say "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the[se] dispute[s]." *Birmingham Assocs. Ltd.*, 547 F. Supp. 2d at 300 (quoting *Collins & Aikman Prods. Co. v. Building Sys., Inc*., 58 F.3d 16, 19 (2d Cir. 1995)).

## IV. Conclusion

For the reasons stated herein, Moving Defendants' motion to dismiss is GRANTED. Accordingly, it is hereby:

ORDERED that Counts 1, 3, 4, 9, 11, 14–18, and 22–24 of Plaintiffs' First Amended Complaint are dismissed as against the non-signatory Defendants, and Counts 2, 5–8, 10, 12, 13, 19–21 are dismissed as against all Defendants.

IT IS FURTHER ORDERED that Plaintiffs' Counsel's motion to withdraw as attorney

11

for Plaintiffs, (Doc. 136), is GRANTED.

IT IS FURTHER ORDERED that, in light of Plaintiffs' representation in related case *Coast Autonomous, LLC et al. v. Global Resources Management Consultancy, Inc. et al.*, 17-cv-8422, that the related case and the instant case "involve the same parties, property, transactions, and events," (Related Case Statement, 17-cv-8422, Doc. 45), as well as Plaintiff's representations in the instant case that "the Defendants' parallel case [] deals with the same facts and issues as this case," (Doc. 129, at 1), the parties are directed to meet and confer and submit a joint letter on the docket in 17-cv-8422, no later than January 31, 2020, proposing a course of action in the related case.

The Clerk of Court is respectfully requested to close the open motions at Documents 108 and 136, and is further directed to terminate this case.

SO ORDERED.

Dated: January 30, 2020
    New York, New York

Vernon S. Broderick
United States District Judge